IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

J. MICHAEL HAND,

      **Plaintiff,**

v.

      Case No. 6:10-cv-01296-SAC-KGS

WALNUT VALLEY SAILING CLUB,

      **Defendant.**

## MEMORANDUM IN SUPPORT OF MOTION FOR INVOLUNTARY DISMISSAL

COMES NOW Defendant Walnut Valley Sailing Club, by and through its undersigned counsel of record, and files this Memorandum in Support of its Motion for Involuntary Dismissal pursuant to Fed. R. Civ. P. 41(b) as a consequence of Plaintiff's breach of his duty to keep the mediation proceedings held in this matter confidential.

## INTRODUCTION

The parties engaged in mediation on May 3, 2011. Immediately after the mediation, Plaintiff sent an e-mail to at least 44 members of Walnut Valley Sailing Club detailing various things the mediator told him and the precise nature of settlement offers exchanged at the mediation, attempting to make his settlement position appear reasonable and the Board's settlement position appear unreasonable, questioning whether the Club's money was being wisely spent by participating in the mediation with "2 attorneys at the meeting," and generally playing victim by accusing the Club's Board of Governors of "decid[ing] they are [not] ready to end this."[1] That Plaintiff's detailed report of the mediation proceedings harmed the relationship

---

[1] Exhibit A, Hand Deposition Exhibit 1.

between Walnut Valley's Board of Governors and the members who it represents is evidenced by responses from certain of those 44 Club members, which included the following:

- ➢ The Club's Commodore "has a very expensive ego [which] the club should [not] have to pay for."[2]

- ➢ "It's about time we draft a petition to relieve [the Commodore] of his position."[3]

- ➢ "No board member contacted me and asked me if you should be readmitted to the club. . . [The Commodore] is not speaking for the club, he obviously has committed perjury . . . [and] [t]he punishment for perjury in most states, and under federal law, is the imposition of a fine, imprisonment, or both."[4]

- ➢ "Unbelievable!"[5]

- ➢ "[W]hen you ask a wild hog to leave your garden alone, you may have a good old fight on your hands."[6]

- ➢ "[The Commodore's] personal vendetta to keep [Plaintiff] from returning to the club will cost the members up to 25K in legal fees . . . I've tolerated a lot but this statement at the mediation was the last straw."[7]

- ➢ "[The Board's] egos are the reason that they insist that any settlement must involve [Plaintiff] no longer being a member."[8]

In 2010, Plaintiff was expelled from his membership in Walnut Valley Sailing Club for, among other things, publishing false statements to the Club's membership as part of a campaign

---

[2] Exhibit B, Hand Deposition Exhibit 4.
[3] *Id.*
[4] Exhibit C, Hand Deposition Exhibit 6.
[5] Exhibit D, Hand Deposition Exhibit 2.
[6] Exhibit E, Hand Deposition Exhibit 7.
[7] Exhibit F, Hand Deposition Exhibit 8.
[8] *Id.*

to harm the relationship between the Club's Board of Governors and the Club's membership. Because this lawsuit is predicated upon Title III of the ADA, reinstatement into the Club is Plaintiff's exclusive remedy. But Plaintiff's recent actions make clear that his campaign to harm the Board of Governors persists and that Plaintiff should not be reinstated into the Club in light of his continuing efforts to unfairly[9] disparage the Board. And because Plaintiff's recent actions violate the Rules of this Court, they are cause for involuntary dismissal under Rule 41(b).

## NOTE REGARDING REDACTIONS TO EXHIBITS

This motion is predicated upon Plaintiff's violation of D. Kan. Rule 16.3(i). This same rule prohibits Walnut Valley from disclosing to the trial judge details regarding what happened at mediation. Accordingly, although Plaintiff's e-mail to 44 Club members and certain of their responses are attached hereto as Exhibits, they are substantially redacted to prevent disclosing to the Court details about the mediation in violation of Rule 16.3(i). Individuals' names and e-mail addresses are also redacted in order to protect the Club's members. If the Court find that it is necessary to review Plaintiff's account of the mediation and Club members' responses, Walnut Valley will submit them to the Court, unredacted, in whatever manner the Court directs.

## ARGUMENT AND AUTHORITIES

D. Kan. Rule 16.3(i) requires that parties keep mediation proceedings confidential as to third parties, as follows:

> **Confidentiality.** Except as provided in paragraph (j) below, this court, the mediator, all counsel, the parties, and any other persons involved in the mediation shall treat as 'confidential information' the contents of written mediation statements, anything that happened or was said, any position taken, and any view of the merits of the case formed by any participant in connection with any

---

[9] To be certain, Plaintiff's methods were grossly unfair. The Club cannot respond to Plaintiff's accusations without itself violating the Court's Local Rule requiring that mediation proceedings be kept confidential. There is no opportunity to give Club membership the Board's side of the story regarding what happened at mediation.

mediation. 'Confidential information' shall not be [among other restrictions] disclosed to anyone not involved in the mediation process[.]

Because Plaintiff clearly violated this rule by publishing a detailed report of the mediation proceedings in this matter to at least 44 members of Walnut Valley Sailing Club, because of the resulting prejudice, and because his malicious disclosure damaged the relationship between Defendant's Board of Governors and its membership, Defendant seeks involuntary dismissal of this lawsuit.

Fed. R. Civ. P. 41(b) allows for involuntary dismissal of a case when a party fails to prosecute or follow the court's orders and rules. *See* Fed. R. Civ. P. 41(b); *Roush v. Colorado*, No. 10-3237, 2011 WL 601643, at *1 (D. Kan. Feb. 11, 2011). When considering dismissal as a sanction, this court evaluates the following factors: (1) the degree of actual prejudice to the defendant; (2) the amount of interference with the judicial process; (3) the culpability of the litigant; (4) whether the court warned the party in advance that dismissal of the action would be a likely sanction for noncompliance; and (5) the efficacy of lesser sanctions. *Ehrenhaus v. Reynolds*, 965 F.2d 916, 920-21 (10th Cir. 1992). These factors need not be weighed equally in the Court's analysis. *Gross v. Gen. Motors Corp.*, 252 F.R.D. 693, 696 (D. Kan. 2008).

**A.      Defendant Was Prejudiced by Plaintiff's Breach of the Confidentiality Requirement.**

Walnut Valley is a social club and, as such, its continued existence depends upon the extent to which its members find value in the society the Club offers. Indeed, one can sail at El Dorado Lake without being a member of Walnut Valley Sailing Club. When members perceive that Walnut Valley's Board is mistreating one of their social acquaintances by refusing a particular settlement offer at mediation, a viable consideration is to simply resign from the Club. This is not mere speculation or a slippery slope prediction. Indeed, as one member said in response to Plaintiff's e-mail detailing the mediation, "[My wife] and I are about to join the sail

club at Cheney. I have a friend over there that was on their board and he says they just like to sail and have fun!" [Exhibit G, Hand Deposition Exhibit 3]. For another member, "the mediation was the last straw." [Exhibit F, Hand Deposition Exhibit 8].

Plaintiff's e-mail detailing the mediation causes additional problems separate and apart from promoting incivility and prompting Club members to consider resigning. One e-mail response indicated that members are contemplating "a petition to relieve [the Commodore] of his position." [Exhibit B, Hand Deposition Exhibit 4]. Another e-mail suggested that the Commodore "committed perjury" when he rejected a particular settlement offer, and should be subjected to "a fine, imprisonment, or both." [Exhibit C, Hand Deposition Exhibit 6]. This is a high price indeed to pay for participating at mediation in good faith.

This case now begs the question of why a social club would wish to have as a member someone who intentionally damaged the Club's relationships with 44 of its members by way of an e-mail which, by this Court's Local Rule, Plaintiff was prohibited from sending and to which the Club cannot possibly respond without a similar breach of confidentiality. Clearly, it would not wish to. The U.S. Supreme Court has confronted a similar issue in the employment context when a defendant/employer discovered during the course of a lawsuit the plaintiff's misconduct which would have resulted in termination upon reinstatement. *See McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 361-62 (1995). The Court held that, "as a general rule," it is inappropriate to order the Plaintiff's reinstatement under these circumstances:

> We do conclude that here, and as a general rule in cases of this type, neither reinstatement nor front pay is an appropriate remedy. It would be both inequitable and pointless to order the reinstatement of someone the employer would have terminated, and will terminate, in any event and upon lawful grounds.

*McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 361-62 (1995).

But reinstatement is all that Plaintiff can seek in this lawsuit. He pursues only a retaliation claim predicated upon an alleged violation of Title III of the ADA. The anti-retaliation provision of the ADA, 42 U.S.C. § 12203(a), does not specifically delineate the remedies for a violation of it. Instead, it refers to the remedies available under the specific provision of the ADA upon which the retaliation claim is predicated. *See* 42 U.S.C. § 12203(c) ("The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b) of this section, with respect to subchapter I, subchapter II and subchapter III of this chapter, respectively."); H.R. Rep. No. 101-485, pt. III, at 72 (1990), reprinted in 1990 U.S.C.C.A.N. 445, 495 (Section 12203(c) "provides the same remedies and procedures for victims of retaliation and coercion as in the underlying title. For example, an individual who was retaliated against in an employment discrimination complaint would have the same remedies and procedures available under [Title I] as an individual alleging employment discrimination."); *Cable v. Department of Dev'l Serv.*, 973 F. Supp. 937, 940 (C.D. Cal. 1997) (same, citing the House Committee's Report).

Accordingly, for retaliation claims predicated upon protected activity associated with an alleged violation of Title III of the ADA, § 12203(c) incorporates the remedies of Title III of the ADA, which in turn incorporates provisions of Title II of the Civil Rights Act. The applicable provisions of Title II authorize injunctive relief only as follows:

> Whenever any person has engaged or there are reasonable grounds to believe that any person is about to engage in any act or practice prohibited by section 2000a-2 of this title, a civil action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order, may be instituted by the person aggrieved . . .

42 U.S.C. § 2000a-3(a) (emphasis added). Monetary and punitive damages are not available for retaliation claims predicated upon violations of Title III of the ADA. Plaintiff may only seek his

reinstatement into the Club, and his actions to damage the Club make clear that reinstatement is in appropriate.

> B. **Plaintiff's Breach of the Confidentiality Requirement Substantially Interfered With the Judicial Process.**

"It is well settled that dismissal is warranted where, as here, a party has engaged deliberately in deceptive practices which undermine the integrity of judicial proceedings." *Anheuser-Busch, Inc. v. Natural Beverage Distributors*, 69 F.3d 337, 348 (9th Cir. 1995); *see also Wyle v. R.J. Reynolds Indust.*, 709 F.2d 585, 589 (noting that district courts have the power to dismiss an action where a party willfully "engage[s] in conduct utterly inconsistent with the orderly administration of justice"). Federal statutes and cases from the Tenth Circuit and abroad all recognize that the "guarantee of confidentiality is essential to the proper functioning of [a court-sanctioned] settlement conference program." *See, e.g., Clark v. Stapleton Corp.,* 957 F.2d 745, 746 (10th Cir. 1992); 28 U.S.C. § 652(d). The Alternative Dispute Resolution Act of 1998, which requires each federal district court to "provide litigants in all civil cases with at least one alternative dispute resolution process, including . . . mediation," expressly instructs District Courts to adopt local rules "provid[ing] for the confidentiality of the alternative dispute resolution processes and to prohibit disclosure of confidential dispute resolution communications." *See* 28 U.S.C. § 652(d). The District of Kansas complies with this congressional mandate by way of D. Kan. Rule 16.3(i).

As noted, the Tenth Circuit has described this "guarantee of confidentiality" "essential to the proper functioning" of such alternative dispute resolution processes. *Clark,* 957 F.2d at 746 (further describing the revelation of mediation proceedings to third parties as "a serious breach of confidentiality"). *Clark* cited the Second Circuit case of *Lake Utopia Paper v. Connelly*

*Containers,* 608 F.2d 928, 930 (2d Cir. 1979), which articulated why confidentiality in mediation proceedings is necessary:

> If participants cannot rely on the confidential treatment of everything that transpires during [mediation] sessions then counsel of necessity will feel constrained to conduct themselves in a cautious, tightlipped, non-committal manner more suitable to poker players in a high-stakes game than to adversaries attempting to arrive at a just resolution of a civil dispute. This atmosphere if allowed to exist would surely destroy the effectiveness of a program which has led to settlements . . ., thereby expediting cases at a time when . . . judicial resources . . . are sorely taxed.

608 F.2d at 930, *cert. denied,* 444 U.S. 1076, 100 S.Ct. 1023, 62 L.Ed.2d 758 (1980). Employing a similar rationale, the Sixth Circuit explained that without the protection of confidentiality in mediation proceedings, "the entire negotiation process collapses upon itself, and the judicial efficiency it fosters is lost." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976, 980 (6th Cir. 2003).

Plaintiff's violation of D. Kan. Rule 16.3(i) substantially interferes with the judicial process by jeopardizing the effectiveness of a program which fosters settlement and thereby diminishes demands on judicial resources.

### C. Plaintiff Himself Is Unquestionably Culpable for Breaching the Confidentiality Requirement.

Because Plaintiff, and not his counsel, violated D. Kan. Rule 16.3(i) by communicating the details of the mediation proceeding to 44 Club members, Walnut Valley has established the "culpability of the litigant." *See Ehrenhaus,* 965 F.2d at 921 (evaluating the plaintiff's personal culpability for conduct underlying imposition of sanctions and approving language of the district court's order reading, "It is plaintiff's acts, not those of his counsel, which are at issue here."). Plaintiff's deposition testimony established beyond any doubt that he violated D. Kan. Rule 16.3(i), and did so for no good reason:

Q: Would you agree that you disclosed information [as] to the mediation?

> A: Yes; absolutely.
>
> Q: Will you agree that you disclosed information from the mediation to people who were not only club members, but to others who were not club members?
>
> A: Absolutely.
>
> Q: Why did you do that?
>
> A: Club members had a right to know. Do you have any idea how much money that they're spending on you?

[Exhibit H, Hand Depo. 24:4 – 24:15].

It is clear that Plaintiff acted alone in his violation of D. Kan. Rule 16.3(i). His counsel demonstrated *his* intent to strictly comply with D. Kan. Rule 16.3(i) when he tendered the following objection at Plaintiff's deposition just as defense counsel was beginning to ask Plaintiff questions about his e-mail communications with 44 Club members:

> I do object, because we have an agreement that all those mediation conferences are off the record and are to be confidential, so we don't plan to get into any of those conferences, other than the fact that we held mediation.

[*Id.* at 13:8 – 13:13].

### D. Plaintiff Will Not Receive Notice, But Notice is Not Always Necessary.

Plaintiff will not receive notice that his lawsuit could be dismissed for failing to comply with D. Kan. Rule 16.3(i), but notice is not always necessary. *In re Hopkins*, 162 F.3d 1173 (table), 1998 WL 704710, at *2 (10th Cir. 1998); *Chavez v. City of Albuquerque,* 402 F.3d 1039, 1045 (10th Cir. 2005) ("Chávez admits that no such warning was warranted in these circumstances").

### E. Lesser Sanctions Will Not Alleviate Plaintiff's Breach of the Confidentiality Requirement.

Plaintiff's violation of Rule 16.3(i)'s confidentiality requirement, in addition to other actions he has taken as recently as within the past three days, make clear that he has little respect

for this Court's rulings and the judicial process as a whole.  For instance, less than two weeks after the Court denied Plaintiff's Motion for an Injunction to reinstate him into Walnut Valley Sailing Club, Plaintiff began trespassing on Walnut Valley's premises as if the Court never denied the injunctive relief he sought.  Plaintiff continued trespassing, undeterred by a cease and desist letter drafted by defense counsel advising Plaintiff's counsel that, "if [Plaintiff] visits the Walnut Valley Sailing Club again, [the Club] will be taking this matter up with the Court."  The facts regarding Plaintiff's repeated trespasses at Walnut Valley's facility are verified and set forth in great detail in Walnut Valley's Memorandum in Support of its Motion for Temporary Restraining Order, Doc. 45.  While trespassing, supposedly to visit with his friends at the Club, Plaintiff inexplicably wandered about the Club observing various structures on Walnut Valley's premises.  Plaintiff's unauthorized and unsupervised inspection of Walnut Valley's premises was an effort to informally conduct a Rule 34 inspection of premises despite the fact that the Court has not ruled upon Plaintiff's Motion to Extend Discovery [Doc. 36] and despite Rule 34's requirement of a written discovery request.

Furthermore, sanctions less than involuntary dismissal cannot redress the fact that Plaintiff intentionally damaged the Club's relationships with 44 of its members by way of an e-mail which violated Rule 16.3(i).  Neither can lesser sanctions address the fact that Plaintiff's sole remedy in this action is reinstatement to a social club, and for good reason based upon his direct e-mail attack upon it, the Board of Governors does not wish to reinstate Plaintiff.

## **CONCLUSION**

WHEREFORE, for the reasons stated herein, Defendant Walnut Valley Sailing Club respectfully requests the Court enter an Order involuntarily dismissing Plaintiff's lawsuit or granting such additional relief as the Court deems just and equitable.

Respectfully submitted,

**s/ Alan L. Rupe**
ALAN L. RUPE, #08914
JASON D. STITT, #22216
KUTAK ROCK LLP
1605 N. Waterfront Parkway, Suite 150
Wichita, KS 67206
Telephone: (316) 609-7900
Facsimile: (316) 630-8021
alan.rupe@kutakrock.com
jason.stitt@kutakrock.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of June, 2011, I electronically filed the above and foregoing with the Clerk of the Court by using the CM/ECF system, which will send notice of electronic filing to the following:

> Jim Lawing
> Farmers & Bankers Building
> 200 East First Street, Suite 400
> Wichita, KS 67202
>
> *Attorney for Plaintiff*

**s/ Alan L. Rupe**
Alan L. Rupe                                    #08914